## WATERS v. GRAYSON.

A slave brought to this State and remaining with the person who brought him until his death, being an immovable in his possession, must be presumed to belong to him. If such a title is to be effected by parol evidence as to its origin in a State in which slaves are considered as personal property, the evidence ought to be definite, positive, and of unquestionable credibility.

APPEAL from the District Court of Caldwell, *Barry*, J. *McGuire* and *Ray*, for the appellant. *Garrett*, for the defendant. The judgment of the court was pronounced by

EUSTIS, C. J. The plaintiff claims from the defendant, who is administrator of the succession of *Robert Caldwell*, deceased, a certain negress slave named *Nancy*, and a reasonable sum for her hire, since 1836. The defendant answers that the slave forms a part of the property of the succession of said *Caldwell*, he, *Caldwell*, having purchased her in Missouri in that year, and having been in possession of her up to his death, and that, since that period, she

WATERS
v.
GRAYSON.

has been in possession of the representatives of his succession. There was judgment for the defendant, and the plaintiff has appealed.

The admissions and acts of the administrator of the succession in relation to the subject of this suit, we attach no importance to, inasmuch as the title to the slave acquired in Missouri, which is to determine this controversy, rests upon the testimony of the plaintiff's witness, *Logan.*

The plaintiff is the sister of the late *Robert Caldwell.* In her petition, she says that, in 1836, her brother loaned to her $300, and she permitted him to take into his possession the slave in controversy until the sum was refunded to him, he agreeing to pay her a reasonable compensation for the services of the slave, which she avers to be $100 per year, and claims for eleven years hire, $1,100, less the $300 loaned. The witness, *Logan,* says: " I know of getting possession of a negro slave called *Nancy* from the plaintiff. It was, in the year 1836, that *Robert Caldwell* got possession of said slave *Nancy,* in the county of Perry, State of Missouri. The reason of his getting possession of her was, that the said plaintiff had sold the said slave to one *Isaac Flynn,* who had become dissatisfied with the title of said slave, and *Robert Caldwell* proposed to advance the money to *Flynn* for the plaintiff, *Mary Ann Waters,* which, I was informed by *Caldwell,* was done accordingly—the sum of money being $300 ; that said *Caldwell* was to return said slave to plaintiff, whenever she repaid to him the sum of $300. In a conversation with *Caldwell,* said *Caldwell* informed this deponent that he did not make this arrangement in relation to said slave for the sake of profit; and, speaking of the plaintiff's slaves generally, he spoke of the little profit they were to his sister, the said plaintiff, and that she would do well to let him take them all to the State of Louisiana, and hire them out or work them."

By the laws of this State slaves are considered as immovable property, and the title to them is governed by the rules relating to the latter, as to its proof and the forms in which it is transferred. In Missouri, where the title to this slave originated, slaves are held to be personal property; and the evidence respecting their transfer is said to be the same as relates to that class of property. The slave, being an immovable, in the possession of *Caldwell,* when she was brought to Louisiana, in 1836, and remaining with him until his death, must be presumed to belong to him. If this title, which the law implies from possession, in the absence of any evidence impugning it, is to be affected by parol evidence as to its origin in a State in which slaves are considered as personal property, we think that such evidence ought to be definite, positive, and of unquestionable credibility. The declarations of a single witness, at this remote period of time, as to the admission of a person no longer living, ought certainly to be received under due caution, and to be weighed and examined with scrutiny. Otherwise the uncertainty which would be thrown around the titles to slaves brought from other States, would be of serious injury to that description of property ; mortgagees, as well as owners, would feel alarmed at the danger which an interested and unscrupulous witness might create, in relation to titles in slaves.

When we come to examine this testimony under these reservations, we find it to fail in establishing, with proper certainty, the binding consent of the plaintiff to the supposed proposal of *Caldwell* to purchase the slave for and on her account, and the promise to pay the $300 at all events. The slave belonged to *Flynn.* *Caldwell* paid the $300, and took her. But did the plaintiff request him to do it ? Did she bind herself to re-pay the purchase money ? Did she

consent that the slave should be taken to Louisiana at her risk, and she remain bound to reimburse the $300, even in the event of the death of the slave? Did she, during the eleven years, ever demand the hire of the slave, or an account of her earnings? These are questions to which the evidence gives no satisfactory answer.

It may well be true that *Caldwell* would willingly have returned the slave to her former mistress, who was his sister, had she desired it, and remunerated him for the advance for her purchase, and he may so have expressed himself; but, from what is before us, we attribute such a willingness and declaration on his part to the promptings of natural affection for his sister, rather than to any contract made between them for the pledge of the slave for a loan of money. An expression, on his part to this effect, may have caused his administratrix to withhold the slave from the sale of the effects of his succession, in 1842. But, as we have stated, the rights of *Caldwell's* succession to the slave depend on his title, which he acquired by purchase from *Flynn*, and which we consider the testimony of *Logan* does not impair or modify.

The district judge has given, by his decision in favor of the defendant, his opinion as to the effect of the testimony of *Logan;* and, concurring with him therein, there is nothing in the case which would warrant us in reversing it.

*Judgment affirmed.*